**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PATRICK WELLS BYRNE,

Plaintiff,

v. CASE NO. 0:24-cv-61276

GOODWILL SOUTH FLORIDA TEP, LLC,

Defendant.
_________________________________/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, GOODWILL SOUTH FLORIDA TEP, LLC, (hereinafter "Goodwill"), by and through his undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1, hereby moves this Court to enter judgment as a matter of law against Plaintiff, PATRICK WELLS BYRNE, for the following reasons:

First, Plaintiff is not able to establish that Goodwill violated the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et. seq.* (hereinafter, the "FLSA") because he cannot establish (1) the overtime hours he contends are owed, or (2) that Goodwill knew or should have known about his purported off-the-clock work. *Laplante v. Terraces of Lake Worth Rehab. & Health Ctr., LLC*, 725 F. Supp. 2d 1358, 1361 (S.D. Fla. 2010); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1329 (S.D. Fla. 2001) (employee has burden to prove that he has in fact performed work for which he was not paid).

Second, and similarly, Goodwill should not be liable for any alleged violation of the FLSA because Plaintiff deliberately failed to report the overtime he is now seeking. *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1319-20 (11th Cir. 2007).

Third, Plaintiff is not entitled to overtime for his travel to and from Wisconsin in December 2022 because he did not work while traveling. [DE 24 (Statement of Material Facts) at ¶ 13]. Further, Plaintiff was paid for all hours of work performed and Goodwill was not required to compensate Plaintiff for traveling to Wisconsin by airplane. [*Id.* at ¶ 15]; 29 C.F.R. § 785.39.

Fourth, Plaintiff's allegation that he worked 48 hours per week for 101.57 weeks is not supported by the record. Plaintiff worked on average between 43.03 and 37.5 hours per week during calendar years 2022 through 2024. [D.E. 24 at ¶ 34]. If Plaintiff's allegations were correct, he would have worked 416 overtime hours in 2023, the only complete calendar year he worked with Goodwill, but his hours for 2023 were about 20% of what he claims: 83.73 hours for the entire year. [*Id.* at ¶ 35]. Indeed, what the record shows is forty-five weeks where Plaintiff worked less than forty hours and fifty-six weeks where he was paid overtime based on the hours Plaintiff himself reported. [*Id.* at ¶ 32-33].

Finally, Plaintiff is not entitled to liquidated damages because Goodwill at all times acted in good faith and had reasonable grounds for believing its actions were not in violation of the FLSA. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375-76 (4th Cir. 2011) (quoting 29 U.S.C. § 260).

# I. BACKGROUND

## a. Plaintiff's Employment

On August 16, 2022, Plaintiff began his employment with Goodwill as an hourly Assistant Operations Manager with a compensation rate of $27.40 per hour and $41.10 per overtime hour. [DE 24 at ¶ 1]. On August 9, 2022, Plaintiff attended Goodwill's

orientation and received Goodwill's handbook and various robust policies explicitly stating that off the clock work was prohibited, and that any off the clock work and/or paycheck discrepancies were to be reported to the Human Resources Director. [*Id*. at ¶¶ 3-5].

On September 8, 2022, a month after attending orientation, Plaintiff sued his prior employer for overtime pursuant to the FLSA seeking $19,420.00 in unpaid compensation, $18,720.00 of which he alleged was for 20 hours of overtime per week accruing from January to June of 2022. [*Id*. at ¶¶ 3, 11].

On July 16, 2024, Plaintiff was suspended and on July 18, 2024, his employment was terminated after Goodwill's investigation found that Plaintiff was punching another employee's timecard, but the employee's actual work hours were less than what Plaintiff inputted on the employee's payroll. [*Id*. at ¶ 22].

**b. <u>Plaintiff's FLSA Claim</u>**

On July 18, 2024, Plaintiff spoke with Goodwill's Human Resources Director and met with the Vice President of Human Resources but did not report that he had been working off the work during his two years of employment. [*Id*. at ¶ 23]. Instead, later that day Plaintiff filed this lawsuit alleging, much like in the lawsuit against his prior employer, that Goodwill owes him overtime because he worked approximately 48 hours per week during his two years of employment. [*Id*. at ¶¶ 24, 26].

Plaintiff did not keep any records of the overtime hours he contends he worked, but claims the hours accrued when he: (1) "arrived at work approximately one hour before the operation opened and stayed approximately one hour after the operation closed each day to properly open and close the operation;" (2) traveled to Wisconsin in December

2022 for approximately three or four days for work; and (3) "was not allowed to take a proper uninterrupted lunch break." [*Id*. at ¶¶ 27-28].

In the course of his employment, Plaintiff was well aware about how to record time, as he not only kept his time but also processed "hours of employees looking to submit payment through [Goodwill's payroll vendor] ADP." [*See id*. at ¶¶ 18-19]. Additionally, Plaintiff knew how to report issues with his hours, which he did on at least one occasion in May of 2024, when he had to submit a manual timesheet due to issues with the timekeeping system. [*See id*. at ¶ 18]. Similarly, on July 25, 2024, after his termination, Plaintiff brought to Goodwill's attention an issue with a paycheck he received for vacation time, but did not raise the purported off-the-clock work he now contends is owed. [*Id*. at ¶ 25].

Further, on at least one occasion, Plaintiff was reminded that he was an hourly employee as occurred the night of September 13, 2023, when Plaintiff sent an email from his cell phone and the Director of Loss Prevention, Safety, and Security replied to him stating "you should not be working off the clock and responding to emails at this time. Unless I was not aware you are now an exempt employee." [*Id*. at ¶ 16]. One of Plaintiff's supervisors, Kevin Martinez, who Plaintiff testified told him to work of-the-clock was copied in Mr. Aragon's reply but Plaintiff did not inquire further with Mr. Martinez regarding why he was purportedly receiving conflicting instructions. [*Id*. at ¶ 17]. Mr. Martinez and Javier Fernandez, who also supervised Plaintiff, did not instruct Plaintiff to work off the clock or indicated to him that he was salaried. [*Id*. at ¶ 29].



SPDN-868764429-3469059

When Plaintiff traveled to Wisconsin on December 6, 2022, Plaintiff did not take any Goodwill materials with him on the trip. [*Id*. at ¶ 13]. Plaintiff was paid for all work hours and reimbursements he submitted regarding the Wisconsin trip. [*Id*. at ¶¶ 14-15].

**II. Standard for Summary Judgment.**

Summary judgment is appropriate if it appears through pleadings, depositions, admissions, and affidavits that there is “no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of demonstrating the basis for its motion and the absence of evidence in support of the nonmoving party’s case. *Northfield Ins. Co. v. Barlow*, 983 F. Supp. 1376, 1378-79 (N.D. Fla. 1997) (*citing Celotex*, 477 U.S. at 323; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)). If the moving party carries its burden, then the nonmoving party must show the existence of a genuine issue of fact for trial. *Id.* at 1379.

**III. Plaintiff Cannot Establish that he is Owed Overtime for “Off the Clock” Work.**

In order for Plaintiff to recover for unpaid overtime, he must demonstrate that: (1) he worked overtime without compensation; and (2) Goodwill knew or should have known of Plaintiff’s overtime work. *Laplante*, 725 F. Supp. 2d at 1361-62. No violation of the FLSA occurs “where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it.” *Allen*, 495 F.3d at 1319. “[W]here the acts of an employee prevent an employer from acquiring knowledge . . . of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [the FLSA’s overtime provisions].” *Forrester v. Foodliner*, 646 F.2d 413, 414-15 (9th Cir. 1981). “The relevant knowledge is not ‘I know

that the employee was working,' but 'I know the employee was working and not reporting his time.'" *Guillaume v. Select Med. Corp.*, No. 12-CV-80447-RYSKAMP/HOPKINS, 2013 U.S. Dist. LEXIS 200191, at *10 (S.D. Fla. Nov. 4, 2013) (internal citations and quotes omitted). Here, Plaintiff is not able to establish that he is owed overtime for "off the clock" work he alleges he performed with Goodwill's knowledge.

An employee who brings a lawsuit under the FLSA for unpaid overtime compensation and liquidated damages bears the initial burden of proving by a preponderance of the evidence that he performed the work for which he was not properly compensated. *See, e.g., Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1346 (S.D. Fla. 2008) aff'd, 302 F. App'x 905 (11th Cir. 2008). In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), the Supreme Court explained:

> When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises … In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88 (internal citations omitted); *Santelices,* 147 F. Supp. 2d at 1329 ("[A]lthough the Supreme Court established a standard for awarding damages when the evidence of damages is inexact or imprecise, it did not eliminate the employee's burden to prove that he has in fact performed work for which he was not paid."); *Estrada v. FTS USA, LLC*,

688 F. App'x 830, 831 (11th Cir. 2017) (applying *Mt. Clemens* and finding that plaintiff offered "only vague and contradictory assertions regarding the work for which he was allegedly not paid, and those assertions cannot support 'just and reasonable inference[s]' about the nature or extent of that work."); *see also Morgan v. Kalka & Baer LLC*, 750 F. App'x 784, 790-91 (11th Cir. 2018) (affirming summary judgement explaining "[t]o the extent [plaintiff] rejects [the employer's] records, the burden is on her to produce specific evidence showing she did in fact perform work without compensation and that her work was in excess of the 40-hour workweek.").

Plaintiff contends in conclusory fashion that he worked approximately 48 hours per week by arriving early and not taking lunch and that he should be paid overtime for the Wisconsin trip. [*Id*. at ¶¶ 26-27]. However, discovery is now closed and Plaintiff does not have any records to support his claim despite being well aware that off the clock work was prohibited at Goodwill and he had just sued his prior employer for unpaid overtime. [*Id*. at ¶¶ 11, 28].

Instead, the record consists of the earnings statements Plaintiff received from Goodwill and the timesheets entered by Plaintiff. [*Id*. at ¶¶ 32-34]. Goodwill anticipates that Plaintiff will argue that Goodwill had the burden to keep records, but Plaintiff was the one entering his own time. [*Id*. at ¶ 31]; *Gaylord v. Miami-Dade Cty.*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur."); *Jackson v. Corr. Corp. of Am.*, 606 F. App'x 945, 952 (11th Cir. 2015) (affirming summary judgment in favor of the employer and finding that plaintiff "failed to meet even the relaxed burden" in *Mt. Clemens* because she "never stated with any clarity or precision the

number of hours she allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a factfinder in approximating [her] unpaid overtime.")

Furthermore, Plaintiff was familiar with how to keep time since he processed the hours of other employees and on at least one occasion when Plaintiff had an issue entering time, he made Goodwill aware. [*Id*. at ¶¶ 19, 23, 25].He was also familiar with the FLSA since he sued his prior employer shortly after starting his employment with Goodwill. [*Id*. at ¶ 11]. Despite this, Plaintiff waited until after his termination to raise the purported overtime due to him. [*Id*. at ¶ 24].

**IV. Goodwill Should Not be Liable for any Alleged FLSA Violation Because Plaintiff Deliberately Failed to Report the Alleged Uncompensated Hours.**

Aside from the lack of evidence to support Plaintiff's claim for unpaid overtime, his failure to report these alleged uncompensated hours amounts to a deliberate attempt to prevent Goodwill from acquiring knowledge regarding the off-the-clock work, and thus Goodwill did not cause Plaintiff to work in violation of the FLSA. *Laplante*, 725 F. Supp. 2d at 1361-62. There is nothing to support Plaintiff's claim for "off the clock" work, filed on the same day as his termination when he had contact with Goodwill's Human Resources Director and Vice President of Human Resources, and there is nothing to support even a remote inference that Goodwill discouraged him from reporting eight hours of overtime a week.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then

summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50. Plaintiff's claim is simply not colorable because he has only made conclusory statements to support his claim. Based on the competent substantial evidence, Goodwill did not have, nor should it have had, reason to believe that Plaintiff was performing off the clock work. *Laplante*, 725 F. Supp. 2d at 1362-63; *Santiago v. Sanders*, No. 1513452, 2017 U.S. App. LEXIS 28796, *6-7 (11th Cir. Aug. 8, 2017) (affirming judgement as a matter of law in employer's favor where employee "failed to demonstrate that his employers knew or should have known he was owed overtime pay," in part because employee did not follow his employer's instruction "to write down and keep track of his hours owed").

**V. Plaintiff is not Owed Overtime for the Trip to Wisconsin.**

The Department of Labor has promulgated 29 C.F.R. § 785.39, Travel Away From Home Community, providing that:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. *<u>As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile</u>*.

*Id.* (emphasis added); *see Gelber v. Akal Sec., Inc.*, 14 F.4th 1279, 1281-82, n.4 (11th Cir. 2021). Accordingly, Goodwill was not required to compensate Plaintiff for traveling by airplane.

Plaintiff did not take any Goodwill materials on his trip to Wisconsin in December 2022, and thus did not work on the flight. [DE 24 at ¶ 13]. Plaintiff arrived in Wisconsin on December 6, 2022, at around 11:00 a.m. and reported that he worked from 8:30 a.m. to 1:44 p.m. and from 2:14 p.m. to 4:30 p.m. [*Id.* at ¶¶ 12, 15]. Plaintiff was paid for the time he reported for the week of the trip, including 11.73 hours of overtime during that period and all trip expenses he submitted to Goodwill. [*Id.* at ¶¶ 14-15].

## VI. Plaintiff's Allegation that he worked 48 hours per week for 101.57 weeks is not Supported by the Record.

The time entered by Plaintiff and the earning statements he received show that Goodwill fully complied with the requirements of the FLSA. [*Id.* at ¶¶ 32-34]. First, Plaintiff's calculation of 101.57 is incorrect because Plaintiff began working on Tuesday, August 16, 2022, not August 8, 2022. [DE 24 at ¶ 1]. On August 9, 2022, Plaintiff attended orientation, but he did not begin work until the following week on August 16, 2022. [*Id.* at ¶¶ 1, 3].

Second, Plaintiff did not work an average of 48 hours per week. In 2022, Plaintiff worked an average of 43.03 hours per week; in 2023 Plaintiff worked an average of 38.75 hours per week; and in 2024 Plaintiff worked an average of just 37.5 hours per week. [*Id.* at ¶ 34]. In 2022, Plaintiff worked 83.73 hours of overtime, in 2023 he worked 96.40 overtime hours, and in 2024 he worked just 25.47 overtime hours. [*Id.* at ¶ 35]. Looking at Plaintiff's allegations in the light most favorable to him, he would have worked approximately 416 hours in 2023, but the time reported fell well below that. [*Id.* at ¶¶ 32-34; Pl.'s Dep. Ex. 5].

Finally, there are 46 weeks for which Plaintiff cannot claim overtime because he worked less than forty hours. [*Id.* at ¶ 32]. For the weeks he did work over 40 hours, he

was compensated for the time he reported for arriving early, not having lunch, working late, and/or working on weeks. [*Id.* at ¶ 33].

**VII. Even Assuming Plaintiff Could Establish a Violation, Plaintiff is Not Entitled to Liquidated Damages.**

"[A] district court, in its sound discretion, may refuse to award liquidated damages if 'the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008) (quoting 29 U.S.C. § 260). "An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was 'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'" *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987).

In the instant matter, the record is replete with evidence that Goodwill acted in good faith toward Plaintiff. First, none of Goodwill's conduct could be construed as willful. *See, e.g., Perez* 650 F.3d at 375-76 (crediting district court's finding that employer's acts were not willful as evidence of employer's good faith); *Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 547-48 (4th Cir. 1998) (same). Second, Goodwill informed Plaintiff, who had just sued his prior employer for overtime, that off the clock work was prohibited. [DE 24 at ¶¶ 4, 9]. Plaintiff was also reminded on at least one occasion that he should not be emailing after work hours. [*Id.* at ¶ 16]; *see Martinez-Hernandez v. Butterball, LLC*, No. 5:07-CV-174-H(2), 2011 U.S. Dist. LEXIS 112445, at *8-9 (E.D. N.C. Sept. 30, 2011) (stating § 260 "requires the employer to prove an honest intention to

ascertain and follow the law") (citing *Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990)).

**VIII. Conclusion.**

Summary judgment should be granted in favor of Goodwill because Plaintiff can establish his claim. Plaintiff was fully aware that he was an hourly employee, and he knew how to enter his time and report issues with his time and paycheck. Plaintiff also knew how to report his overtime, which he was paid for fifty-six weeks out of his two-year employment with Goodwill.

WHEREFORE, Goodwill respectfully requests this Court grant summary judgment in favor of Goodwill along with such other and further relief as this Court deems just and proper.

Dated: January 21, 2025.

Respectfully submitted,

*/s/ Susan Potter Norton*
Susan Potter Norton, Esq.
Florida Bar No. 0201847
snorton@anblaw.com
Allen, Norton & Blue, P.A.
121 Majorca Avenue, Suite 300
Coral Gables, FL 33134
Tel: (305) 445-7801
Fax: (305) 442-1578
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 21, 2025, a copy of the foregoing was served via electronic mail to the following attorneys of record:

Elliot Kozolchyk, Esq.
Koz Law, P.A.
800 East Cypress Creek Road, Suite 421
Fort Lauderdale, Florida 33334
Tel: (786) 924-9929
Fax: (786) 358-6071
Email: ekoz@kozlawfirm.com

*/s/ Susan Potter Norton*
Attorney